UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

In re:

KENT C. ROBINSON and NAOMI U.
ROBINSON,

      Debtors.

Case No. 25-40508-BRW

Chapter 13

## MEMORANDUM DECISION

**Appearances**:

>Alexandra O. Caval, Caval Law Office, P.C., Twin Falls, Idaho, Attorney for the Debtors

>Kate Wheeler Peterson and Jon A. Stenquist, Parsons Behle & Latimer, Idaho Falls, Idaho, Attorneys for the creditor Redd Ranches, LLC

## I.  INTRODUCTION

The Debtors Kent C. Robinson and Naomi U. Robinson (the "Debtors") seek to avoid liens they say impair their homestead exemption pursuant to 11 U.S.C. § 522(f)[1] via a proposed chapter 13 plan (Doc. No. 2) (the "Plan").  They are proceeding in what is colloquially known as a "chapter 20 case," such that the Debtors are now in a chapter 13 case but have also recently obtained a discharge in a chapter 7 case.  They claim that the liens on their homestead should be avoided as wholly unsecured because the recently increased homestead exemption available to them in this chapter 13 case, which was not available when they had filed their chapter 7 case, plus the other consensual lien, leaves no equity to which the judicial liens may attach.  Finally, because they have already obtained a chapter 7 discharge, the Debtors assert that once the liens

---

[1] Hereinafter, unless otherwise indicated, all chapter and section references are to the Bankruptcy Code (11 U.S.C. §§ 101-1532), and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

are avoided, those lien creditors have no unsecured claim to assert in the chapter 13 case to be paid through the Plan.

Judicial lien creditor Redd Ranches, LLC ("Redd Ranches") has one of the liens that are proposed to be avoided in the Plan as impairing the Debtors' homestead exemption, and it opposes such relief. Redd Ranches contends that the value of the Debtor's real property has equity to which its judicial lien may attach.[2]

Because there is a factual dispute about the value of the Debtor's real property, on December 10, 2025, the Court conducted an evidentiary hearing. The Court heard testimony from three witnesses: the chapter 7 Debtor, Mr. Robinson; the Debtors' residential appraiser, Scott Moyes; and Redd Ranches's residential appraiser, Wendy Lyda, and admitted various exhibits into evidence. This Memorandum Decision resolves this contested matter. Rules 9014(c) and 7052.

## II. JURISDICTION, AUTHORITY, AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the constitutional authority to issue a final order in this core matter under 28 U.S.C. § 157(b)(2)(K). Venue is appropriate in this Court under 28 U.S.C. §§ 1408 and 1409.

---

[2] The issue for the Court in this proceeding as resolved by this Memorandum of Decision is solely the value of the real property at issue in this case. The Court is not determining whether the Plan should be confirmed. A hearing on confirmation is set for hearing on January 6, 2026, at 1:30 p.m. (MT), as a telephonic hearing. *See* Doc. No. 36 (minute entry). Because there are issues with respect to what the Plan provides as to the lien intended to be avoided in this case, the Court addresses some of the legal issues herein.

MEMORANDUM DECISION - 2

## III. FINDINGS OF FACT

A.  Background Facts and Procedural History

The Debtors filed this chapter 13 case on August 11, 2025.  Doc. No. 1.  The real property principally at issue in this case consists of two parcels located at 115 E. 4th North, Malta, Idaho 83342 (the "Property"), which make up the Debtors' homestead.  The Property was disclosed in the Debtors' schedules filed in this case, and was valued, at that time, in the amount of $365,000.  Doc. No. 1 at 10.  On Schedule C, the Debtors claim a homestead exemption of $350,000 as to the Property.  Doc. No. 1 at 19.  There has been no objection to the Debtors' claimed homestead exemption in the Property.  Adjacent to the Property is real property owned by Rafter Eleven LLC (the "Rafter Eleven Parcel"), which is an entity wholly owned and controlled by the Debtors.  *See* Doc. No. 1 (listing in the Debtors' schedules Rafter Eleven LLC as owned 100% by the Debtors and disclosing that that entity owns real property, to which the Debtors assigned a $7,500 value at the time of filing the schedules).  The Rafter Eleven Parcel is not claimed as exempt by the Debtors, nor could it have been because it is currently owned by the Debtors' entity and is not property of the bankruptcy estate.  Despite this fact, the parties in this case have asked the Court to value the Rafter Eleven Parcel based on the stated intent of the Debtors to transfer the parcel into the bankruptcy estate and provide for such transfer in an amended chapter 13 plan that the Debtors intend to file.

The Debtors filed the Plan on August 11, 2025.  Doc. No. 2.  The Plan, as relevant here, includes a non-standard provision at paragraph 8.1, labelled as a "Plan Addendum," which modifies the lien avoidance section of the form plan at paragraph 3.4.  *Id.* at 11.  The Plan Addendum notes that the Debtors filed a chapter 7 case on May 30, 2022 (case no. 22-40199-NGH), received their discharge on October 5, 2022, and the case was closed on June 6, 2024.

Based on this discharge, the Plan Addendum provides that the Debtors are not personally obligated on judicial liens filed on the Property prior to the chapter 7 case.

The Plan Addendum provides the following table listing the consensual lien as well as the judicial liens on the Property:

| Party | Inst. No. | Record Date | Claim | Rank Order | Remaining Value |
|---|---|---|---|---|---|
| First Federal (1st DOT) | 2012-002705 | 06/2012 | $94,374.00[3] | 1st position | $270,626.00 |
| Debtors' (homestead exemption) | | | $350,000 | 2nd position | $0 |
| Redd Ranches (judgment lien) | 2021-001946 | 04/14/2021 | $65,032.22 | 2nd position | $0 |
| Agri-Service (judgment lien) | 2021-002024 | 04/16/2021 | $117,271.76 | 3rd position | $0 |
| GJ Vertline Pumps (judgment lien) | 2022-002011 | 05/04/2022 | $16,204.00 | 4th position | $0 |

The remainder of the Plan Addendum provides:

> The value of the property fully secures First Federal. The remainder of the residence is fully protected by the homestead exemption. Pursuant to 11 U.S.C. § 522(f), the judgment liens held by Redd Ranches, Agri-Service, and GJ Vertline Pumps impair the Debtors' homestead exemption[,] which totals $350,000.
>
> Because the Debtors' personal liability was extinguished in their chapter 7 case, the unsecured claims of Redd Ranches, Agri-Services, and GJ Vertline shall be set at $0[,] which is consistent with the 9th Circuit's [sic] holding in *Washington v. Real Time Resolutions, Inc.*, 602 B.R. 710 (9th Cir. 2019).

---

[3] Exhibit 103 (statement provided by the Debtors stating this amount due and owing this creditor on August 1, 2025).

MEMORANDUM DECISION - 4

> Upon entry of the confirmation order, the Debtor[s] shall obtain orders avoiding the judgment liens of Redd Ranches, Agri-Services, and GJ Vertline [P]umps.

Doc. No. 3 at 11.

On October 28, 2025, Redd Ranches objected to confirmation of the Plan and the proposed avoidance of its judicial lien proposed in the Plan Addendum.  Doc. No. 30.  In the objection, Redd Ranches takes issue with the value of the Property, stating that it has obtained an appraisal of the Property and the value determined by their professional is $490,000.  Based on its calculation, then, Redd Ranches claims to be secured in the Property in the amount of $45,626.  Moreover, Redd Ranches claims to be fully secured in the Rafter Eleven Parcel based on a judgment it obtained against the Debtors and Rafter Eleven LLC prior to the chapter 7 case (the "Judgment"), which it recorded in the real property records and obtained a judgment lien pursuant to Idaho law.  *See* Ex. 200 and Ex. 103 (Redd Ranches's proof of claim submitted as exhibits by both parties).  The Judgment was entered on April 9, 2021, as against *both* Mr. Robinson and Rafter Eleven, LLC, a Utah limited liability company.  *Id.*  The Judgment was recorded in the Cassia County Recorder's Office under instrument number 2021-001946, on April 14, 2021 (the "Judgment Lien").  *Id.*

Finally, Redd Ranches claims that Debtors may not obtain a lien-avoidance order on confirmation of the Plan but instead must wait until they complete their Plan payments.

A confirmation hearing was held on November 4, 2025, at which time the Debtors and Redd Ranches advised the Court of the disputed value of the Property and the Rafter Eleven Parcel.  Doc. No. 36.  The Court set the valuation issues for an evidentiary hearing, noting that any Plan confirmation issues would be addressed at a later confirmation hearing.  *Id.*

MEMORANDUM DECISION - 5

On December 10, 2025, the parties appeared for an evidentiary hearing and presented testimony, exhibits, and argument as to the appropriate values to be attributed to the Property and the Rafter Eleven Parcel. At the conclusion of the hearing, the Court noted its concerns about valuing the Rafter Eleven Parcel given that it is not property of the bankruptcy estate, as it is owned by the Debtors' limited liability company. As stated above, the Debtors asked that the Court nevertheless value the Rafter Eleven Parcel because they intend to transfer that real estate to themselves and understand that the value of the Rafter Eleven Parcel would then need to be paid into the Plan or to Redd Ranches as the lienholder (as will be discussed below). Redd Ranches also asked the Court to evaluate the Rafter Eleven Parcel. In the interest of efficiency, and pursuant to the agreement of the parties, the Court endeavors to do so herein.

B. Evidence and Testimony at the Evidentiary Hearing

By stipulation of the parties, the Court admitted each exhibit provided by the parties at the hearing on December 10, 2025. For the Debtors, the Court admitted the "Updated Appraisal Effective 11.12.2025 by Scott Moyes," at Exhibit 100 (the "Debtors' Expert Report"); a "Cassia Co. Assessment for Comp. Property Located at 1971 S 2350 E Malta, Idaho," at Exhibit 101; the "First Fed. Mortgage Balance at Filing," at Exhibit 102; and Redd Ranches Proof of Claim #3, at Exhibit 103. For Redd Ranches, the Court admitted the Redd Ranches Proof of Claim No. 3, at Exhibit 200; and the "Appraisal by Wendy Lyda, Certified Residential Appraiser," at Exhibit 201 (the "Creditor's Expert Report").

The Debtors' first witness was the debtor Mr. Kent Robinson. The Court found Mr. Robinson to be a credible witness. Mr. Robinson testified as to the details of the Property and the Rafter Eleven Parcel and explained that the Debtors filed this chapter 13 case due to Redd Ranches proceeding with a foreclosure of its judicial lien on the Property.

As to the Rafter Eleven Parcel, Mr. Robinson confirmed that the parcel is indeed owned by his entity, Rafter Eleven LLC, despite that entity being "defunct."[4]  Regarding this parcel, Mr. Robinson testified that it is approximately .82 acres, after taking into account a twenty-five-foot easement on the south side of the property, which is a county road.  *See* Debtors' Expert Report, Ex. 100 at DE-006, DE-024.  The Rafter Eleven Parcel has no improvements.  Mr. Robinson stated that he investigated whether he could build a home on this parcel, as was his intention when purchasing it, but was told by county officials that a home may not be built on the Rafter Eleven Parcel due to it being under one acre in size.  This is apparently a county ordinance, because, according to Mr. Robinson and his own investigation, it is not possible to put a well far enough away from the septic tank on parcels less than one acre.

On cross-examination, however, Mr. Robinson admitted that he did not ask for a variance from the county in order to build on the Rafter Eleven Parcel, and did not consider developing the Rafter Eleven Parcel in any other way.  He acknowledged that the Rafter Eleven Parcel benefits him as his business is, in part, in trucking, and he uses the parcel as an entrance to the Property.

Regarding the Property, Mr. Robinson testified as to the condition of the home located on the Property, referencing the Debtors' Expert Report, Ex. 100 at DE-014.  He testified that he built an enclosed pool next to the deck of the home, which is four-feet deep and heated.  The upstairs of the home has two bedrooms and is approximately two thousand square feet.  Downstairs, the home is also approximately two thousand square feet.  Mr. Robinson testified

---

[4] There was some confusion in Mr. Robinson's testimony about whether his entity (Rafter Eleven LLC) or he and his wife had filed the prior chapter 7 case.  As stated above, the Debtors filed the prior chapter 7 case individually.  It does not appear that Rafter Eleven LLC has filed a bankruptcy case at this time.

that there is one bedroom downstairs with egress to the outside.  There are two other rooms downstairs, however, Mr. Robinson's understanding is that those rooms cannot be considered "legal" bedrooms, due to the lack of outside egress in those rooms.  Mr. Robinson further testified that there is mold in the storage room downstairs due to water leaking into that portion of the home.  Finally, Mr. Robinson testified that some of the brick exterior of the home is cracked and that the house, in various places, is settling, causing issues outside and within the home, including causing doors to hang improperly downstairs.

The Debtors' second witness was Mr. Scott Moyes.  The Court recognized Mr. Moyes as an expert witness pursuant to Federal Rule of Evidence 702 as a residential real property appraiser, and the Court found Mr. Moyes to be a credible witness.

He testified that, in valuing the Property, he used the comparable sales value approach, which is "market based," to result in the fair market value.  Mr. Moyes contrasted his report (*i.e.* the Debtors' Expert Report) with the Creditor's Expert Report based on the comparable sales used.  Mr. Moyes stated that the comparable sales used in his report are more likely to provide the appropriate value for the Property because they were located in Malta, Idaho, where the Property is also located.  However, he admitted in small areas, like Malta, in order to find comparable sales, he does extend the dates of sales more broadly than he would in other locations that have more home sales.

In addressing the value of the Property and the home, Mr. Moyes testified that he assigned no value to the pool.  In his report and testimony, he dubbed the pool as a "super amenity" in the Malta, Idaho market.  *See* Debtors' Expert Report, Ex. 100 at DE-001.  He stated the pool cannot be given a value because there is no local market data to support a corresponding increase or decrease in value.  Indeed, Mr. Moyes testified that in his experience in evaluating

MEMORANDUM DECISION - 8

homes in the Malta, Idaho area he has never seen one with a pool.  However, Mr. Moyes acknowledged that the pool is in an enclosed building, and it is heated.

As to the Property, Mr. Moyes testified that a basement room cannot be called a "bedroom," without egress to the outside from that particular room, and as such, he determined that the basement of the home on the Property had only one bedroom.

Regarding the six comparable sales listed in his report, Mr. Moyes testified that comparable sale number 4 was the most similar to the Property, due to its lower gross adjustments noted in his report.  Comparable sale number 4 had an adjusted sales price of $398,080 in Mr. Moyes's report.  Debtors' Expert Report, Ex. 100 at DE-010.  Mr. Moyes testified that he added comparable sales number 5 and 6 to his report, which sold after his initial report (prepared in August 2025) at the Debtors' request.  These comparable sales had an adjusted sales price of $319,390 and $450,270, respectively.  *Id.*

Ultimately, he concluded that the value of the Property was $373,000 (*i.e.* $369,000 home parcel (*see* Debtors' Expert Report, Ex. 100 at DE-002) + $4,000 north strip of land (*see* Debtors' Expert Report, Ex. 100 at DE-006)).

As to the Rafter Eleven Parcel, Mr. Moyes concluded that is value was $7,500.  *See* Debtors' Expert Report, Ex. 100 at DE-006.  Mr. Moyes concludes in his report and testified that the Rafter Eleven Parcel is simply "excess property," and he determined, based on two other land sales that he identifies in his report (DE-006) that the value of the parcel is $10,000 per buildable acre.

As to the Creditor's Expert Report, Mr. Moyes took issue with the comparable sales used by Ms. Lyda as to the Property.  He opined that the sales located in Albion, Elba, and Declo, Idaho were not comparable because of the views and locations associated with the comparable

MEMORANDUM DECISION - 9

sales as compared to the views and location of the Property, located in Malta, Idaho. *See* Creditor's Expert Report, Ex. 201 at 7-8 (showing no "view" adjustment for comparable sales no. 3, 4, and 5). Despite this testimony, Mr. Moyes did not suggest what the view and location adjustment should be in the Creditor's Expert Report for each of these comparable sales.

Additionally, Mr. Moyes pointed out that the Rafter Eleven Parcel evaluation done by Ms. Lyda is flawed because the "highest and best" use suggested for the parcel is as a residential home site, but that the parcel is not buildable as a residential home site given its size. He contrasted his report with this conclusion and noted that he did not value the Rafter Eleven Parcel as a buildable lot and because of that his valuation came in at significantly less than the $45,000 for the parcel as evaluated by Ms. Lyda in the Creditor's Expert Report (Ex. 201 at 40-41).

On cross examination, Mr. Moyes acknowledged that his report did not include any data to support his conclusion that the pool had no impact on the value of the Property. Additionally, Mr. Moyes acknowledged that some of his comparable sales were manufactured homes (*i.e.* comparable sales no. 1 and 3), which he admitted were less valuable than constructed homes, like the home on the Property.

In support of its objection to Debtors' proposed lien avoidance, Redd Ranches called Wendy Lyda to testify as to the value of the Property and the Rafter Eleven Parcel. The Court recognized Ms. Lyda as an expert under Federal Rule of Evidence 702 as a residential real property appraiser. The Court found Ms. Lyda to be a credible witness.

Ms. Lyda testified that she conducted a fair market valuation of the three parcels involved in this case. She testified that she was unable to verify with the city of Malta whether the Rafter Eleven Parcel was able to be built upon, as the city never responded to her inquiries.

MEMORANDUM DECISION - 10

Ms. Lyda testified that all of her comparable sales were within 20 miles of the Property, which she believed was an appropriate geographic area to find comparable sales. Moreover, she testified that she believes it is appropriate to include sales from Declo, Elba, and Albion, Idaho, despite the view and location differences noted by Mr. Moyes. In her report, Ms. Lyda identified comparable sale number 1 (Creditor's Expert Report, Ex. 201 at 7) as the "most comparable" sale, which she provided an adjusted sales price of $494,200. This property is the same one as used by Mr. Moyes in his report as comparable sale number 6, which he valued as $450,270 as the adjusted sales price. Debtors' Expert Report, Ex. 100 at DE-010.

Generally, it appears the difference in the adjusted sales price between the two reports is based upon the value of a large shop that was on the comparable sale's property. Mr. Moyes noted this shop and reduced $106,000 from the sales price to compare to the Property, whereas Ms. Lyda reduced the sales price of the comparable sale in the amount of $50,000 due to the shop. Ms. Lyda testified that comparable sales number 3 and 4 were the other most similar sales she used to reach the value of the Property.

Finally, she testified that she found the manufactured home sales in Malta identified by Mr. Moyes but rejected those as comparable sales because a manufactured home is significantly different in value than a "stick-built" home, as is on the Property. Ultimately, Ms. Lyda testified, and her report concluded, that the value of the Property is $490,000. Creditor's Expert Report, Ex. 201 at 9.

As to the Rafter Eleven Parcel, Ms. Lyda did a separate appraisal of that property. *See* Creditor's Expert Report, Ex. 201 at 40. As noted above, she admitted the lack of information with respect to whether the property was buildable as a residential home site. She acknowledged that she used a "hypothetical" and "extraordinary assumption" in her report that the site was

MEMORANDUM DECISION - 11

buildable.  She stated that if it was not buildable that would affect her value of the Rafter Eleven Parcel.  With these assumptions, and as compared with the comparable sales she found, Ms. Lyda concluded that the value of the Rafter Eleven Parcel is $45,000.  Creditor's Expert Report, Ex. 201 at 41.

Taking issue with Mr. Moyes's report, Ms. Lyda pointed to his use of manufactured homes as comparable sales and testified that in her opinion those were not truly comparable when determining a value here.

On cross examination, Ms. Lyda acknowledged that her valuation included the square footage of a road on the south side of the Property, as well as her assumption that the Rafter Eleven Parcel was buildable.  If the square footage of the road is removed, the size of the parcel is reduced to .82 acres.  Ms. Lyda further acknowledged that she did not adjust the valuation due to the view and location for the Declo, Elba, and Albion comparable sales that she used.

With respect to the Property, Ms. Lyda testified that there are three "legal" bedrooms in the basement.  This is directly contradictory to Mr. Moyes's report and testimony, which stated that there is only one due to the egress issue.  On cross, Ms. Lyda stated that the egress in the basement can be in an adjoining bedroom and that an exterior exit from the basement allows the rooms downstairs to be considered "legal" bedrooms.  She stated that she based this conclusion on her experience but acknowledged that she is not familiar with Cassia County building code with respect to what constitutes a "legal" bedroom.

In her report, Ms. Lyda estimated the pool and the parcel adjoining the Property which could be used for RV parking at a value of $20,000.  When asked to give the value for just the pool, Ms. Lyda stated that she gave it a $5,000 value but acknowledged that there were no

MEMORANDUM DECISION - 12

comparable sales in the area for her to value it. Additionally, Ms. Lyda acknowledged that she was not able to confirm the presence of mold in the home and did not account for it in her value.

As to the Rafter Eleven Parcel, Ms. Lyda stated that the comparable sales as to that property were provided on page 10 of the Creditor's Expert Report. However, she acknowledged that the comparable sales in Albion are much different than the Rafter Eleven Parcel, particularly with the building restrictions purportedly in place on lots less than an acre in Malta.

## C. The Court's Findings of Fact Considering the Experts' Reports as to Value

While the Court appreciates both experts' analysis, testimony, and reports, the Court finds that neither are impervious to scrutiny. In considering the value of the Property, taking into account all the evidence and testimony and giving it the appropriate weight, the Court finds and concludes that the value of it is $394,247. With respect to the value of the Rafter Eleven Parcel, taking into account all the evidence and testimony and giving it the appropriate weight, the Court finds and concludes that the value of it is $8,200.

The Court reaches the conclusion as to value of the Property by taking the adjusted sales price for comparable sales numbers 4, 5, and 6 in the Debtors' Expert Report, which properties are all located in Malta, Idaho, and averaging the adjusted sales prices of those properties, resulting in an average value of $389,247. The Court finds it appropriate to add to that value $5,000 to account for the pool, present on the Property, which amount is consistent with the value ascribed to it by Ms. Lyda in her testimony. The Cout concludes, as did Ms. Lyda, that the pool does add some value to the Property, and the suggestion by Mr. Moyes that it is a valueless feature is not persuasive. Adding these two numbers together results in the value of $394,247 for the Property.

MEMORANDUM DECISION - 13

The Court finds that on the issue of the number of bedrooms in the basement that Mr. Moyes's testimony in this respect is more persuasive. His testimony was not impeached with respect to whether the other rooms downstairs could be considered "legal" bedrooms and concluded that the basement of the Property only has one "legal" bedroom and used that conclusion in his report. Ms. Lyda testified that there were three bedrooms in the basement based on her understanding, but she acknowledged that she was not sure of Cassia County building code which applies to this Property. As such, relying on Mr. Moyes's report and valuation for comparable sales number 4, 5, and 6 is appropriate because the correct number of below-grade bedrooms is accounted for in his report.

Next, on the issue of whether there is mold in the Property, Mr. Moyes noted, as did Mr. Robinson, the presence of mold in the basement. Ms. Lyda's report indicates that she is not sure whether it is mold, however, her report at page 16 does have a picture of the water damage and indicates a "mold-like substance." Creditor's Expert Report, Ex. 201 at 16. As such, the Court finds that there is mold in the basement of the Property and including the "condition" adjustment, as to this issue, as found in Mr. Moyes's report, is appropriate. Mr. Moyes also considered the outside brick on the home, which includes some cracking, as impacting the "condition" of the Property as well.

The Court further finds that it is appropriate to exclude the other comparable sales in Mr. Moyes's report because, as pointed out by Ms. Lyda and Redd Ranches, the adjustments made to those properties are significant, mostly due to the use of manufactured homes in comparable sale number 1 and 3. The home on the Property is not a manufactured home. Comparable sale number 2 in the Debtors' Expert Report was excluded from the Court's analysis due to the large—in excess of 40%—"gross adjustment" applied to that property. Moreover, because the

MEMORANDUM DECISION - 14

Court is relying on Mr. Moyes's report with respect to comparable sales number 4, 5, and 6, the issue of the "view" of the comparable sales outside of Malta, Idaho is moot.

Finally, while the Court, pursuant to the law set out below, is required to value the Property as of the petition date under a § 522(f) analysis, the Court finds and concludes based on the testimony of both experts that considering sales that occurred within a few months postpetition is appropriate given the small sample size of comparable sales in Malta, Idaho.

With respect to the Rafter Eleven Parcel, the Court valued it at $8,200 based on the testimony and evidence provided at the hearing. *See, e.g.*, Debtors' Expert Report, Ex. 100 at DE-006 (stating the parcel is "effectively" .82 acres after considering the road easement). While there is some dispute whether the Rafter Eleven Parcel is buildable, Mr. Moyes and Mr. Robinson testified that, pursuant to local code, it is not because it is less than one acre. Ms. Lyda was somewhat equivocal on this point, acknowledging that her value of the property assumed that it was a buildable lot, but that she was not certain. Ms. Lyda acknowledged that if the parcel was not buildable, it would negatively impact her value. Based on the testimony provided to the Court at the hearing and relying on that evidence only in reaching its conclusions here, the Court concludes that the Rafter Eleven Parcel was not buildable as of the petition date. Given this conclusion and considering the county road easement reducing the lot size to .82 acres, and crediting Mr. Moyes's evaluation of "excess land" at $10,000 per buildable lot acre, the Court finds and concludes that the value of the Rafter Eleven Parcel is $8,200 without further discount.

Notably, at closing, counsel for the Debtors stated the intention to transfer the Rafter Eleven Parcel to the Debtors individually and account for that in an amended chapter 13 plan. Because the Rafter Eleven Parcel is adjacent to the Property, its value to the Debtors is greater because it is being used by the Debtors to support a trucking business and the parcel may be

MEMORANDUM DECISION - 15

consolidated with the other parcels and thus become buildable in the future.  Accordingly, the

Court declines to further reduce the value of the Rafter Eleven Parcel, despite the $7,500 value

provided by the Debtors' expert, Mr. Moyes.

## IV. APPLICABLE LAW

While the issue of value was before the Court at the evidentiary hearing, the Court finds

it necessary to address the law as it impacts the Plan, which may inform the parties on their

approach going forward.

When debtors obtain a discharge in a chapter 7 case and subsequently file a chapter 13,

they are said to be proceeding in a "chapter 20" case, despite the Bankruptcy Code having no

such chapter.  *See, e.g.*, *Inv. Trust, Series 2006-1 v. Blendheim (In re Blendheim)*, 804 F.3d 477,

488 (9th Cir. 2015) (using this term and addressing the attendant rights and obligations of

"chapter 20" debtors).  In a chapter 13 case, debtors who have received a discharge in a chapter 7

case within four years are not eligible for a discharge in a subsequently filed chapter 13 case

filed within that timeframe.  § 1328(f).  Despite being ineligible for a discharge, chapter 20

debtors are still able to take "advantage of the other [c]hapter 13 tools available to [them,]"

including permanent avoidance of a lien in the chapter 13 case.  *Id.* at 488; *see also id.* at 493–94

(conducting this analysis).  Avoidance of the lien via the subsequent chapter 13 case is only

permanent upon completion of the chapter 13 plan payments, however.  *See id.* at 487 ("The

Code treats any lien voided under a [c]hapter 13 plan as reinstated upon dismissal or conversion,

restoring to creditors their state law rights of foreclosure on the debtor's property.") (citing

§§ 348(f)(1)(C); 349(b)(1)(C)); *see also* § 349(b)(1) ("Unless the court, for cause, orders

otherwise, a dismissal of a case . . . (1) reinstates— . . . (B) any transfer *avoided under section*

*522* . . . of this title . . .; and (C) any lien voided under section 506(d) of this title.") (emphasis

added)); *see also Washington v. Real Time Resolution, Inc. (In re Washington)*, 602 B.R. 710, 713 n.6 (9th Cir. BAP 2019) (citing *In re Blendheim* and stating that a lien is avoided when there is no eligibility for discharge upon the debtor completing payments under the confirmed chapter 13 plan).

Finally, when a debtor obtains a discharge of his or her *in personam* liability of a debt secured by a lien via a chapter 7 discharge, the avoidance of the lien (*i.e.* an *in rem* liability) in a subsequent chapter 13 case does not result in an unsecured claim in the chapter 13 case due to the prior discharge. *See In re Washington*, 602 B.R. at 716 (concluding that the discharge injunction from a prior chapter 7 discharge prevented an avoided lien from being an unsecured claim in the subsequent chapter 13 case).[5]

Section 522(f)(1) provides that a debtor "[m]ay avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(A) a judicial lien[.]" § 522(f)(1). Judicial liens may be avoided under § 522(f) if the court determines that such a lien impairs an exemption to which the debtor would have been entitled in an asset that a debtor had an interest at the time of the fixing of the lien. *Owen v. Owen*, 500 U.S. 305, 310 (1991); *Farrey v. Sanderfoot*, 500 U.S. 291, 296 (1991); *Culver, LLC v. Chiu (In re Chiu)*, 304 F.3d 905, 908 (9th Cir. 2002). "[I]t is generally accepted that for purposes of § 522(f) lien

---

[5] There are courts that disagree with this conclusion and analysis, as *In re Washington* noted. *See In re Washington*, 602 B.R. at 714 (noting the different approaches as to the unsecured claim in this instance). Subsequent cases have also questioned this conclusion. *See, e.g.*, *In re Hopper*, 2021 WL 3435445, at *5-6 (Bankr. E.D.N.Y. Aug. 5, 2021) (conducting this analysis, collecting cases, and questioning *In re Washington*). While the Court finds the analysis of the court in *In re Hopper* to be somewhat persuasive, the Court declines to reject the analysis and holding of the Ninth Circuit BAP in *In re Washington* on this point, especially when not asked to do so by Redd Ranches.

MEMORANDUM DECISION - 17

avoidance, the relevant valuation date is the date the petitioner filed for bankruptcy relief." *In re Webb*, 2002 WL 33939737, at *3 (Bankr. D. Idaho Dec. 30, 2002).

The Ninth Circuit has stated that "'under § 522(f)(1), a debtor may avoid a lien if three conditions are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien.'" *In re Chiu*, 304 F.3d at 908 (quoting *Estate of Catli v. Catli (In re Catli)*, 999 F.2d 1405, 1406 (9th Cir. 1993)); *see also Goswami v. MTC Distrib. (In re Goswami)*, 304 B.R. 386, 390-91 (9th Cir. BAP 2003) (stating a similar test).

Section 522(f)(2)(A) provides that, "[f]or the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—(i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have been in the absence of any liens." § 522(f)(2).

In the event of multiple judgment liens, under § 522(f)(2)(B), the most junior judicial liens are to be avoided first. *See Bank of Am. Nat'l Trust v. Hanger (In re Hanger)*, 217 B.R. 592, 595 (9th Cir. BAP 1997) (conducting these calculations); *see also* § 522(f)(2)(B) ("In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.").

The procedure under § 522(f) lien avoidance is set forth in Rule 4003(d), which expressly provides that such a proceeding may be commenced by serving a chapter 13 plan that requests such avoidance. *See* Rule 4003(d)(1)(B) ("A proceeding under § 522(f) to avoid a lien . . . must be commenced by: . . . "serving a Chapter . . . 13 plan on the affected creditors as Rule 7004

MEMORANDUM DECISION - 18

provides for serving a summons and complaint."); *see also* LBR 4003-2 (listing requirements for

§ 522(f) lien avoidance when provided for in a chapter 13 or chapter 12 plan).

Finally, as the party seeking to avoid the lien under § 522(f), the debtor has the burden of

proof to establish the avoidance is proper. *In re Marcovitz*, 2011 WL 5041507, at *4 (Bankr. D.

Idaho Oct. 24, 2011) (citing *Estate of Catli v. Catli (In re Catli)*, 999 F.2d 1405, 1406 (9th Cir.

1993)).

## V. APPLICATION OF LAW TO THE PLAN

Applying the relevant legal principles as well as the real property values determined by

the Court above, the Court concludes the following as to the Plan and the Plan Addendum.

Based on the value of the Property determined herein to be $394,247, the Judgment Lien

may be avoided and treated as wholly unsecured under § 522(f) in a chapter 13 plan upon

completion of plan payments.  There is no dispute there was a fixing of a lien on an interest of

the Debtors in the Property.  Moreover, based on the valuation determined here, the lien impairs

the homestead exemption to which the debtor would have been entitled.  And finally, the

Judgment Lien is a judicial lien.  As such, the Judgment Lien is avoidable pursuant to

§ 522(f)(1).

As to the calculation called for under § 522(f)(2)(A), the sum of the Judgment Lien

($93,214.47 *see* Ex. 103 at DE-041), plus all other liens (*i.e.* the consensual lien $94,373 *see* Ex.

102 at DE-036), plus the homestead exemption (*i.e.* $350,000), equals $537,587.47, which

exceeds the value that the Debtors' interest in the property would have been in the absence of

any liens.  While the Court finds and concludes that the Judgment Lien is the first priority

judgment lien on the Property, in order for the Judgment Lien to attach to any equity in the

Property, the value of the Property would need to exceed $444,373 (*i.e.* the sum of the

MEMORANDUM DECISION - 19

consensual lien and the homestead exemption).  Based on the Court's findings of fact as to value of the Property, that is not the case.

However, contrary to the provision of the Plan Addendum, it is not appropriate for the Judgment Lien and other impacted liens to be avoided "[u]pon entry of the confirmation order," as is presently stated.  That provision of the current version of the Plan is contrary to the law and not confirmable.  Instead, pursuant to the analysis and authorities cited herein, the liens shall be avoided only at the conclusion of the payments to be made under a confirmed chapter 13 plan.

Finally, the Rafter Eleven Parcel is a different analysis altogether.  The Judgment is against Rafter Eleven, LLC, a Utah limited liability company *and* Mr. Robinson.  Because the Judgment Lien has been duly recorded, and because Rafter Eleven, LLC did not benefit from the discharge in the Debtors' prior chapter 7 case and apparently had not previously filed its own bankruptcy, the Judgment and the Judgment Lien are still valid with respect to Rafter Eleven LLC in full.  While the Court has determined the value of the Rafter Eleven Parcel pursuant to the request of the parties based on the Debtors' stated intent to transfer the parcel to the bankruptcy estate within the context of an amended chapter 13 plan, the Court makes no findings or determination with respect to what claim or the amount of the claim that may result from the transfer of the Rafter Eleven Parcel to the bankruptcy estate postpetition.  If a dispute arises with respect to those issues, the Court will address them in the context of a claim objection, in the context of determining whether the to-be-amended chapter 13 plan is confirmable, or other appropriate contested matter.

## VI. CONCLUSION

Based on the foregoing, the Court finds the value of the Property to be $394,247 and the value of the Rafter Eleven Parcel to be $8,200.  With respect to confirmation of the Plan,

MEMORANDUM DECISION - 20

currently set for hearing on January 6, 2026, the Court will entertain a request by the Debtors at

that hearing to deny confirmation of the Plan but allow the Debtors to file an amended chapter 13

plan, which the Court will address for confirmation in due course.

      IT IS SO ORDERED.



DATED: December 30, 2025

Brent R. Wilson
U.S. Bankruptcy Judge